UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In Re Application of ALB-GOLD Teigwaren
GmbH for an Order Pursuant to 28 U.S.C. § 1782
to Conduct Discovery for Use in a Foreign
Proceeding.

**MEMORANDUM AND ORDER**

19-MC-1166 (ST)

-----------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

      ALB-GOLD Teigwaren GmbH ("ALB-GOLD") submitted an application under 28 U.S.C. § 1782, requesting the Court's assistance in obtaining discovery from Interpage Co., Inc. ("Interpage"), Gregory Vernikov (the owner of Interpage), Alex's Meat Distributors Corp. ("Alex's Meat"), Vladimir Oterin (the owner of Alex's Meat), and Inna Vernikov (Mr. Vernikov's daughter). Mot. Compel Disc., ECF No. 1. On August 30, 2019, this Court issued a Memorandum and Order granting the motion with respect to Alex's Meat, Mr. Oterin, and Ms. Vernikov. Mem. & Order, ECF No. 19. This Court deferred ruling with respect to Interpage and Mr. Vernikov to allow a brief period of jurisdictional discovery to determine whether the statutory requirements under § 1782 had been met. Following that period, ALB-GOLD filed a renewed motion for discovery, *see* ECF No. 23, and Interpage filed a response in opposition, *see* ECF No. 37. After carefully reviewing the record and the parties' briefing, this Court GRANTS ALB-GOLD's Motion for Discovery for Use in a Foreign Proceeding.

    A. **Factual Background**

      ALB-GOLD is a German pasta manufacturer that is presently seeking discovery to use in an application to revise a foreign arbitration award. ALB-GOLD's discovery application in this Court arises from the Swiss arbitration of a contract dispute between ALB-GOLD and Interpage. The two companies allegedly entered into a five-year Exclusive Importation and Sales Agreement (the "Distribution Agreement") on January 2, 2013. *See* Declaration of Karl Geercken, Esq. ("Geercken Decl."), Ex. 2 (the "Arbitration Award") ¶¶ 30–37, ECF No. 3-2 at 1–93. The Distribution Agreement provided that ALB-GOLD's pasta would be sold in the

United States exclusively under Interpage's private label "Delicious Wonders." Arbitration Award ¶ 31. The Distribution Agreement set annual targets for the sale of ALB-GOLD's pasta by Interpage. *Id.* ¶ 35. In the first year, the target was 144 net tons of pasta. *Id.* In each subsequent year, the annual targets would increase. *Id.* Over the five-year period covered by the Distribution Agreement, Interpage would have sales targets in the total amount of 960 net tons of pasta. *Id.*

Near the end of the first year of the Agreement, it became clear that Interpage would not meet its sales goal for the year. *Id.* ¶¶ 175–77. As a result, at an unspecified date in the first half of December 2013, a representative for ALB-GOLD called Mr. Vernikov to inform him that ALB-GOLD would stop supplying pasta to Interpage for the United States market. *Id.* ¶ 44.

Shortly after this phone call, on December 16, 2013, Interpage claims that it entered into a separate agreement to supply Alex's Meat Distributors Corp ("Alex's Meat"), a grocery distributor, with Delicious Wonders pasta. *Id.* ¶ 46; *see also* Ex. 3 to Geercken Decl. (the "Alex's Meat Agreement"), ECF No. 3-2 at 94–104. Under this Agreement, Interpage would supply Alex's Meat with 960 net tons of Delicious Wonders pasta over a five-year period for a total purchase price of $2,896,000. Arbitration Award ¶ 47. The agreement was proposed by Interpage and drafted by Mr. Vernikov's daughter, who is a lawyer. *Id.* ¶ 243. This single contract for 960 net tons would thus seemingly fulfill the entirety of Interpage's sales targets for the five-year contractual period with ALB-GOLD.

On December 17, 2013, the day after the Alex's Meat Agreement was executed, Mr. Vernikov learned from the freight forwarder responsible for receiving shipments from ALB-GOLD that an order of pasta placed by Interpage on November 7, 2013 had not arrived. *Id.* ¶ 48. ALB-GOLD indeed did not fulfill this order, and it did not regularly provide Interpage with pasta for sale in the U.S. market after this point in time. Interpage, however, despite having had an agreement to buy 960 tons of pasta from ALB-GOLD and an agreement to sell 960 tons of pasta to Alex's Meat, did not notify ALB-GOLD of the existence of the Alex's Meat Agreement for almost four years, until it filed a notice of claim to initiate arbitration against ALB-GOLD on

2

October 18, 2017. *Id.* ¶¶ 57, 193–94.

Instead, between January 2014 and May 2015, Interpage supplied Alex's Meat with pasta that was made by another manufacturer but sold under the Delicious Wonders label. *Id.* ¶¶ 201, 270. At the arbitration hearing, Mr. Vernikov and Mr. Oterin testified that this pasta was of inferior quality and an inadequate substitute, *id.* ¶ 270, but Alex's Meat nonetheless accepted it over the course of this period. From May 21, 2015 to March 3, 2017, however, Interpage's use of the Delicious Wonders label was enjoined pursuant to an order issued as part of a trademark action in this District, leading the company to cease selling the pasta. *Id.* ¶¶ 51–52, 54; *see also Threeline Imports, Inc. v. Vernikov*, 239 F. Supp. 3d 542, 546 (E.D.N.Y. 2017).

On November 13, 2016, Interpage and Alex's Meat entered into a Settlement Agreement (the "Alex's Meat Settlement Agreement"), which was ostensibly intended to resolve Interpage's nonperformance of the Alex's Meat Agreement. Arbitration Award ¶ 53. According to Mr. Oterin's testimony during the arbitration proceeding, Mr. Vernikov's daughter also drafted the Alex's Meat Settlement Agreement. *See* Geercken Decl. at 171–72. Under the settlement, Interpage agreed to pay Alex's Meat $2,209,600 in damages for failure to supply pasta. Arbitration Award ¶ 53. This figure, however, did not credit Interpage for any of the substitute Delicious Wonders pasta that it provided to Alex's Meat between January 2014 and May 2015. *Id.* ¶ 282; Mem. Supp. Ex Parte Appl. ("Pet'rs Mem."), ECF No. 2, at 11–12.

On October 18, 2017, Interpage submitted a request for arbitration against ALB-GOLD. Arbitration Award ¶ 57. Interpage alleged (among other disputes not relevant here) that ALB-GOLD breached the Distribution Agreement by ceasing to ship pasta beginning with the November 7, 2013 order. *Id.* ¶¶ 200–02. The majority of the damages claimed by Interpage stemmed from its inability to fulfill its obligations under the Alex's Meat Agreement, which Interpage claimed foreseeably and reasonably resulted in the damages it agreed to pay under the Alex's Meat Settlement Agreement. *Id.* ¶¶ 200–02, 227.

At the arbitration, ALB-GOLD offered several arguments in response. It submitted that the 2013 Alex's Meat Agreement "defies credibility" because it is commercially implausible that

3

a distributor of Alex's Meat's size would order 960 tons of egg pasta over a 5-year period, and because Interpage never informed ALB-GOLD of this deal even though it would have almost single-handedly satisfied Interpage's delivery targets (indeed, mirrored the exact volume of the combined annual targets) under the Distribution Agreement. *Id.* ¶ 228. ALB-GOLD also argued that the 2016 Alex's Meat Settlement Agreement was fraudulent and the product of collusion between Interpage and Alex's Meat. *Id.*

The Arbitral Tribunal (hereinafter the "Tribunal") did not find that either the Alex's Meat Agreement or the Alex's Meat Settlement Agreement was the product of fraud or collusion. The Tribunal noted that it "examined with great attention" ALB-GOLD's allegations to this effect. *Id.* ¶ 241. However, it found that ALB-GOLD had not discharged its burden to prove that either agreement was fraudulent.[1] *Id.* On November 27, 2018, the Tribunal ordered ALB-GOLD to pay Interpage $1,414,927 in consequential damages and $624,000 in lost profits arising from the Alex's Meat Settlement Agreement. *Id.* ¶ 380.

On May 1, 2019, ALB-GOLD filed an application to take discovery pursuant to 28 U.S.C. § 1782. *See* Application, ECF No. 1. In its initial application, ALB-GOLD requested that the Court issue subpoenas duces tecum against the five aforementioned entities, requiring them to submit to depositions at the Manhattan office of ALB-GOLD's counsel. *See* Exs. 6–10 to Geercken Decl. ("Proposed Subpoenas"), ECF No. 3-2 at 113–65. ALB-GOLD stated that it intends to use evidence discovered through these subpoenas in an application to the Swiss Federal Supreme Court for revision of the arbitral award. Pet'rs Mem. at 1, 15.

The Honorable Margo K. Brodie referred ALB-GOLD's application to me for disposition. *See* Order dated May 2, 2019. On May 7, 2019, an attorney appearing on behalf of Interpage requested leave from the Court to file a response in opposition to ALB-GOLD's petition, which the Court granted. *See* Letter from Interpage, ECF No. 5; Order dated May 7,

---

[1] A majority of the Tribunal also found, over a vigorous dissent, that Interpage did not fail to mitigate the damages that it agreed to pay pursuant to the Alex's Meat Settlement Agreement. *Id.* ¶¶ 269–72.

4

2019. Interpage filed its response on May 17, 2019. *See* Mem. Opp'n § 1782 Petition ("Opp'n"), ECF No. 12.

On August 30, 2019, this Court issued a Memorandum and Order, granting in part and deferring a ruling in part on ALB-GOLD's application to take discovery. *See* Mem. & Order, ECF No. 19. The Court granted the application to allow ALB-GOLD to take discovery from Mr. Oterin, Alex's Meat, and Ms. Vernikov. *See* Mem. & Order. The Court found that statutory factors under § 1782 had been met: all three Respondents "reside or are found in this District"; "the discovery ALB-GOLD seeks against the respondents is 'for use in a proceeding in a foreign or international tribunal[]'"; and ALB-GOLD is an interested party. *Id.* at 15, 16, 21. After evaluating the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004), the Court granted ALB-GOLD's request with respect to Mr. Oterin, Alex's Meat, and Ms. Vernikov and issued so-ordered subpoenas to that effect. *See* Mem. & Order at 26.

The Court deferred ruling with respect to Mr. Vernikov and Interpage to allow a brief period of jurisdictional discovery to determine whether the jurisdictional and statutory requirements for a § 1782 application had been met. *See* Mem. & Order. Following that period of discovery, ALB-GOLD filed a Renewed Motion to Compel Discovery. *See* ECF No. 23. On November 6, 2019, this Court granted Mr. Vernikov's counsel's Motion to Withdraw as Attorney. *See* ECF No. 35. Mr. Vernikov filed a *pro se* Response in Opposition to ALB-GOLD's Renewed Motion to Compel Discovery. *See* ECF No. 37.

**B. Analysis**

As this Court previously discussed in its August 30, 2019 Memorandum and Order, an application for discovery under § 1782 requires a court to answer two distinct questions: (1) whether the court is authorized to grant the request under the statute; and (2) whether the court should exercise its discretion to allow the requested discovery. *See* Mem. & Order at 6 (quoting *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-CV-88 (BSJ), 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006) (quoting *In re Application of Grupo Qumma, S.A.*, No.

M8-CV-85 (DC), 2005 WL 937486, at *1 (S.D.N.Y. Apr. 22, 2005))).

> A district court has the authority to grant a § 1782 request for discovery when: 1) the party subject to the request resides in or is found in the district of the district court; 2) the party seeking discovery intends to use it in a proceeding in a foreign tribunal; and 3) the application is made by a foreign or international tribunal or any interested person. 28 U.S.C. § 1782(a); *see In re Application of Gianoli Aldunate*, 3 F.3d 54, 58 (2d Cir. 1993). The petitioner bears the burden of proving that each of these requirements is satisfied. *See In re Godfrey*, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007) (citing *In re Kolomoisky*, M19-116, 2006 WL 2404332, at *3 (S.D.N.Y. 2006)).

Mem. & Order at 7.

If a court has statutory authorization to grant a § 1782 discovery request, that court must still consider whether it *should* grant the request. A court should consider the following discretionary factors laid out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004):

1) Whether "the person from whom discovery is sought is a participant in the foreign proceeding[;]"
2) "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance[;]"
3) "Whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States[;]" and
4) Whether the § 1782(a) request is "unduly intrusive or burdensome[,]" in which case requests may be rejected or narrowed.

*See Intel*, 542 U.S. at 264–65; *accord In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).

*1. The Court Has the Authority to Grant the Application*

This Court previously deferred ruling on the application with respect to Mr. Vernikov and his alter ego Interpage because it was unclear whether the first statutory requirement had been met—namely, whether Mr. Vernikov "resides or is found" in the Eastern District of New York. *See* Mem. & Order at 8–15 (quoting 28 U.S.C. § 1782). ALB-GOLD argues that *In re del Valle*

6

*Ruiz*, 939 F.3d 520 (2d Cir. 2019), a decision that was recently handed down by the Second Circuit, forecloses any further inquiry into Mr. Vernikov's geographical whereabouts because the Court has personal jurisdiction over him and thus Vernikov is "found" in the Eastern District. This Court agrees.

In *In re del Valle Ruiz*, the Court held that the "resides or is found" language in 28 U.S.C. § 1782 extends to the limits of personal jurisdiction consistent with due process. 939 F.3d at 524, 527–28. In that case, the del Valle Ruiz Petitioners filed a petition in the Southern District of New York seeking discovery from Santander in connection with its purchase of a Spanish bank. *Id.* at 525. Santander argued that, under the meaning of § 1782, it did not "reside" nor was it "found" in the Southern District. *Id.* Based on the Court's "flexible reading of the phrase 'resides or is found'" in *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002), combined with other courts' "broad interpretations to similar 'found' language in other statutes[,]" the *del Valle Ruiz* Court held that "§ 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *del Valle Ruiz*, 939 F.3d at 528. Despite the Court's broad holding with respect to the statutory language, it found that Santander did not have sufficient contacts with the Southern District sufficient to subject it to the court's exercise of specific personal jurisdiction. *Id.*

Mr. Vernikov, like Santander, complains that he does not "reside" nor is he "found" in the Eastern District of New York and thus argues that the Court is not authorized to permit ALB-GOLD's requested discovery. Clearly Mr. Vernikov's argument cannot prevail in light of the rule announced in *del Valle Ruiz*. Unlike in that case, this Court previously found that it has specific personal jurisdiction over Mr. Vernikov based on the fact "that he engaged in all of the transactions and occurrences that are the subject of ALB-GOLD's application while in this District." Mem & Order at 10 n.8. This Court finds that Mr. Vernikov "resides or is found" in the Eastern District of New York because: (1) this Court has personal jurisdiction over him and (2) the statutory requirement that a respondent "resides or is found" in a given district merely stands for the requirement that the Court have personal jurisdiction over the respondent. Thus,

ALB-GOLD has met the first statutory requirement for discovery under § 1782.

This Court previously found that ALB-GOLD meets the second and third requirements under § 1782—namely, that it intends the discovery "for use" in a "foreign tribunal" and it is an "interested person." As discussed in this Court's previous Memorandum and Order, the Swiss revision proceedings are within "reasonable contemplation" because ALB-GOLD has a "concrete basis" for seeking revision of the arbitral award. *See* Mem. & Order at 16–20. Further, the revision proceedings are located in a "foreign tribunal" because the application for revision must be made to the Swiss Federal Supreme Court. *See id.* at 20–21. Finally, ALB-GOLD is an interested person because "it was a party to the arbitration that it now plans to ask the Swiss Federal Supreme Court to revise." *Id.* at 21. ALB-GOLD meets all three statutory requirements to take discovery under § 1782.

  *2. The Discretionary Factors Favor Granting the Application*

Even if the Section 1782 statutory requirements are satisfied, the Court is not required to order the requested discovery. *See Intel*, 542 U.S. at 264. Rather, the Court should consider the discretionary factors laid out in *Intel* to determine whether granting the application is within the proper exercise of its discretion. *See id.* This Court previously analyzed the *Intel* discretionary factors and found that the factors favored granting the application with respect to Alex's Meat, Mr. Oterin, and Ms. Vernikov. *See* Mem. & Order at 22–26. The Court's analysis with respect to two of those factors applies equally to Interpage, as the second and third factors focus on the applicant and not the respondent.

The first factor considers whether the respondent "is a participant in the foreign proceeding[.]" *Intel*, 542 U.S. at 264. The first factor is based on the reasoning that the need for discovery assistance is not as great when the respondent is a party to the foreign proceeding because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* The *Intel* Court reasoned that the need for discovery may be greater for persons who are not participants in the foreign proceeding because those persons may be outside the jurisdiction of the foreign tribunal. *See id.*

8

This Court previously relied on Dr. Favre-Bulle's declaration, in which he stated that the Swiss Federal Supreme Court cannot itself compel discovery from entities and individuals located in the United States. *See* Mem. & Order at 22 (citing Favre-Bulle Decl.[, ECF No. 3-2] ¶ 7). Despite the fact that Interpage is a prospective party to the revision proceedings, "the Swiss Federal Supreme Court cannot order the production of documents or order the deposition of individuals outside of Switzerland[.]" Favre-Bulle Decl. ¶ 7. Interpage does not offer any contrary evidence. In fact, Dr. Romy, on behalf of Interpage, states, "Mr. Favre-Bulle correctly summarizes the general conditions for the revision of a final arbitral award rendered in Switzerland . . . ." Romy Decl., ECF No. 10, ¶ 8. So even though Interpage is a participant, the Swiss Federal Supreme Court cannot compel the discovery that is sought in this application. Thus, the first factor favors ALB-GOLD.

The second factor focuses on the foreign tribunal's "receptivity" to discovery obtained through foreign assistance. Based on Second Circuit precedent, this Court previously assumed that the foreign tribunal would be receptive to evidence discovered through a § 1782 request based on the lack of "authoritative proof" to the contrary. *See* Mem. & Order at 23 (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). Interpage has not provided any additional briefing on this subject, so this Court adheres to its previous finding that this factor is neutral or slightly favors ALB-GOLD. *See* Mem. & Order at 23.

The third factor serves to protect against applicants using foreign discovery assistance as a means of circumventing restrictions on discovery imposed by foreign courts and tribunals. The Court previously found that there was no record evidence indicating that ALB-GOLD's application for discovery assistance was "an attempt to circumvent foreign proof-gathering restrictions or other policies of" Switzerland. *Id.* Interpage has not submitted any additional evidence to this effect. Like before, the Court finds that this factor is neutral or slightly favors ALB-GOLD.

Finally, the fourth factor asks whether the discovery request is unduly intrusive or burdensome. On this point, the Court previously rejected Interpage's arguments that ALB-

GOLD's application is "merely an attempt by ALB-GOLD to retry claims that were rejected by the arbitration tribunal." Mem. & Order at 24. The Court found that "the red flags surrounding these agreements that ALB-GOLD has set forth in its application lead the Court to conclude that ALB-GOLD's need for the requested discovery outweighs the burden on Mr. Oterin, Alex's Meat, and Ms. Vernikov to provide it." *Id.* (citing *In re Chevron Corp.*, 749 F. Supp. 2d 135, 140 (S.D.N.Y. 2010)). Following Ms. Vernikov's deposition, it is apparent that the need for the requested discovery is even greater. Ms. Vernikov's testimony raises serious questions about the authenticity of the Alex's Meat Agreement. Ms. Vernikov testified that she received an unsigned copy of the Agreement for revision in January 2017, even though the document was dated December 2013. *See* Ex. 3 to Geercken Decl. ("Inna Vernikov Depo."), ECF No. 24-3, at 83:23–25; 84:2–4, 17–19; 91:18–25; 93:2–13. The final factor favors ALB-GOLD, and, on balance, the *Intel* discretionary factors favor granting the application in this case.

    *3. Rule 45*

Mr. Vernikov separately argues that Rule 45 of the Federal Rules of Civil Procedure prevents the issuance of a subpoena directing him to personally appear for a deposition in Manhattan because he now resides and conducts business in Florida, which is more than 100 miles away from Manhattan. Rule 45 states, "A subpoena may command a person to attend . . . a deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A).

In support of its Renewed Application, ALB-GOLD submits evidence of a shipping log that purports to show that Interpage continues to transact business in New York. *See* Ex. 1 to Geercken Decl. ("Import Genius Report"), ECF No. 24-1. ALB-GOLD proffers that Exhibit 1 is a "true and correct copy of the relevant fields propagated by an October 14, 2019 search for "Interpage" on "Import Genius," a trade database that tracks shipping activity around the world." Geercken Decl., ECF No. 24, ¶ 2. Exhibit 1 purports to show a series of shipments made between November 2018 to September 2019 where "Interpage International Inc." is listed as the consignee and the consignee address is listed as "8855 Bay Parkway, Suite 8D, Brooklyn, NY."

*See* Import Genius Report. ALB-GOLD argues that, despite Mr. Vernikov's representations, he has continued to regularly transact business in New York and therefore the Court can properly order a deposition in Manhattan.

In opposition, Mr. Vernikov argues that the Import Genius Report was falsified—he states, "The master of falsification, Mr. Geerckeen in order to prove that Interpage is found in New York deceived the Court by falsifying one more document which is "Import Genius Report[.]" Mot. Opp. Renewed App., ECF No. 37, at 2. Mr. Vernikov instead asks the Court to be guided by a report that was prepared by Interpage's broker. *See* Ex. 2 to Vernikov Decl., ECF No. 37-2. In that report, Interpage's address is listed in Brooklyn, New York as of November 2018 but, starting in February 2019, Interpage's address is listed in Florida. *See id.*

Given the conflicting evidence of business transactions within New York, the Court finds that the best course is to approve ALB-GOLD's alternative option and issue a subpoena for an in-person deposition to be held in Florida. In its Renewed Application, ALB-GOLD states,

> [I]n light of the jurisdictional discovery conducted pursuant to the Court's August 30, 2019 Order, ALB-GOLD is fully prepared to take Mr. Vernikov's deposition in Florida or by video. Doing so would reconcile this Court's exercise of personal jurisdiction over Mr. Vernikov with Rule 45(c)(1)(A), allowing ALB-GOLD to depose Mr. Vernikov without requiring Mr. Vernikov to travel more than a hundred miles from his home.

Renewed App. at 11. ALB-GOLD cites to caselaw where district courts have modified subpoenas so that deponents are not required to travel more than 100 miles. *See id.* at 11–12. The previous version of Rule 45 required that subpoenas "be issued 'from the court for the district where the deposition is to be taken[.]'" *U.S. Bancorp Equipment Finance, Inc. v. Babylon Transit, Inc.*, 270 F.R.D. 136, 139 (E.D.N.Y. 2010) (finding subpoenas invalid that required witnesses to attend a deposition in Manhattan) (quoting Fed. R. Civ. P. 45(a)(2)(B)); *see also Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 240 (D.D.C. 2013). Under the previous version, the Court would not have been authorized to issue a subpoena for a deposition in Florida. In 2013, however, Rule 45 was amended to provide that a subpoena issues from the court where the action is pending. *See* Fed. R. Civ. P. 45(a)(2) ("A subpoena must issue from

the court where the action is pending."). Under the new version of the Rule, this Court has the power to issue a subpoena outside of the District, even if it does not have the power to enforce it. *See Greene v. Paramount Pictures Corp.*, No. 14-CV-1044 (JS) (SIL), 2016 WL 4398432, at *1 (E.D.N.Y. July 22, 2016) (finding that subpoena for deposition in Manhattan could be issued, but not enforced, by the Eastern District where the action was pending in the Eastern District). This Court finds it appropriate to issue a subpoena so that ALB-GOLD may conduct a deposition of Mr. Vernikov at a mutually agreed upon location within 100 miles of Mr. Vernikov and Interpage Co.—namely, 419 N. Federal Highway, Hallandale, Florida, 33009. *See* Vernikov Decl., ECF No. 37-1, at 3 (signature block); *United States v. Banki*, No. 10-CR-08 (JFK), 2010 WL 1459442, at *1 (S.D.N.Y. Apr. 6, 2010) (granting motion to depose witnesses at a location to be agreed upon by the parties); *Boss Mfg. Co. v. Hugo Boss AG*, No. 97-CV-8495 (SHS) (MHD), 1999 WL 20828, at *5 (S.D.N.Y. Jan. 13, 1999) (same).

Accordingly, this Court grants ALB-GOLD's request to subpoena Mr. Vernikov, doing business as Interpage, to testify at a deposition and produce specified documents. The Court approves the issuance of the subpoenas in the form of Exhibits 9 and 10 to the Renewed Declaration of Karl Geercken, see ECF Nos. 24-9, 24-10, and the Court directs Mr. Vernikov to comply with the same.[2] The Court is confident that the parties can reach an agreement regarding the appropriate location for a deposition of Mr. Vernikov. If no agreement is reached by February 10, 2020, however, the parties shall file a joint notice on the docket indicating their

---

[2] ALB-GOLD correctly notes that a motion to compel compliance with this Court's subpoena would properly be made in the Southern District of Florida. *See* Pet'rs Renewed App., ECF No. 23, at 15 n.36; *see also* Fed. R. Civ. P. 37 ("A motion for an order to a nonparty must be made in the court where the discovery is or will be taken."). ALB-GOLD asks the Court to preemptively issue an order retaining direct jurisdiction to enforce the subpoena in Florida. As discussed earlier, this Court generally does not have the power to enforce a subpoena outside of this District. *See Greene*, 2016 WL 4398432, at *1. ALB-GOLD cites to two cases where the Southern District of Florida transferred motions to compel to the Eastern District of New York based on the "exceptional circumstances" of those cases. *See* Pet'rs Renewed App. at 15 n.36. In light of those cases, ALB-GOLD argues that "[i]t is unlikely that the Southern District of Florida would decline to transfer a motion to compel back to this Court pursuant to 45(f)." *Id.* This Court is not prepared to opine on the likelihood that another court will grant a particular motion, nor is this Court persuaded that it has the power to override Rule 37 of the Federal Rules of Civil Procedure at a party's request.

respective positions and the Court will set a location for the deposition.

### C. Conclusion

ALB-GOLD's application to take discovery pursuant to § 1782 is GRANTED. Counsel for ALB-GOLD shall contact chambers by telephone to arrange for the receipt of so-ordered subpoenas. Counsel for ALB-GOLD shall immediately forward a copy of this Memorandum and Order to Mr. Vernikov and file proof of service with this Court.

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
January 10, 2020